UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WYNDE COLLINS on Behalf of Herself and on Behalf of All Others Similarly Situated,** § § § § | |
| **Plaintiff,** § § | CIVIL ACTION NO.: 1:22-cv-10386-DJC |
| **V.** § § | |
| **PHILIPS NORTH AMERICA LLC,** § § | |
| **Defendant.** § | |

## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Wynde Collins ("Collins" or "Plaintiff"), on behalf of herself and on behalf of all others who have joined this case as opt-in plaintiffs (the "Opt-in Plaintiffs," and collectively with Collins, "Plaintiffs"), files this Unopposed Motion for Approval of Settlement and would respectfully show the Court the following:[1]

### I.   INTRODUCTION

Plaintiff and Defendant Philips North America LLC ("Defendant" or "Philips," and collectively with Plaintiffs, the "Parties") have reached a settlement of the pending *bona fide* dispute concerning allegations of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides fair and appropriate compensation for their claims.[2]

On March 12, 2022, Collins filed this collective action lawsuit. (Dkt. 1) There were three primary claims raised by Plaintiffs. First, Plaintiffs alleged that Defendant failed to pay certain

---

[1] The Settlement Agreement is attached hereto as Exhibit "1."
[2] Defendant is unopposed to the relief sought in this Motion but does not join in the statements made in this Motion.

workers for all pre-shift work performed by the Plaintiffs that was not compensated by Defendant. Second, Plaintiffs alleged that Defendant failed to pay for all overtime hours worked for certain workweeks as a result of the Kronos hack. Third, Plaintiffs alleged that Defendant failed to pay all overtime owed by not including certain bonus payments into the regular rate of pay.

On August 12, 2022, this Court certified this case as a collective action pursuant to the parties' stipulation. (Dkt. 29). The Court certified the following collective:

> **All of Defendant's current and former employees in the job profile of Contact Center Support Officer, Grades 30-35 (except those with the job title of Reactive Planners 1 or 2), who worked for Defendant during the three year period prior to the filing of this Complaint to the present**.

(*Id.*).

The Notice of this lawsuit was then mailed to the Class Members and individuals joined this case by signing and returning a consent form to join this lawsuit. The consent form executed by the Opt-In Plaintiffs states as follows:

> I authorize the named Plaintiff and Plaintiff's Counsel to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims and entering into a fee agreement with Plaintiff's Counsel, and I understand I will be bound be such decisions.

(Dkt. 28-1).

During the discovery period, the Parties exchanged information as to the claims of the Plaintiffs and the defenses raised by Defendant. Defendant provided Plaintiffs' Counsel with pay records, time records, and other records for the Plaintiffs during the relevant time period covered by this lawsuit. With this information, the Plaintiffs calculated the potential damages they believed could be available to the Plaintiffs.

After the close of the opt-in period, the Parties then engaged in settlement talks. The Parties discussed the strengths and weaknesses of Plaintiffs' claims, Defendant's defenses, and the

2

damages that could be available should Plaintiffs prevail. The Parties then attended mediation with the Honorable Thomas J. Reuter, who previously served for 26 years as a Magistrate Judge in the Eastern District of Pennsylvania. At mediation, the Parties reached a settlement. The final terms of the settlement are reflected in the Settlement Agreement and Release of Claims (the "Settlement Agreement"). *See* Ex. "1."

## II. ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* Some "[c]ourts therefore have refused to enforce wholly private settlements." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)).

Instead, many courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute," are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.

3

However, unlike a class action settlement under Rule 23, the FLSA only requires a one-step approval process. *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. Civ. A. 17-CV-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017). Because individuals who do not opt into an FLSA lawsuit may bring their own separate suits, FLSA collective actions do not implicate the same due process concerns as a Rule 23 class action. *Id.* at *1 (internal citations omitted).

The Court may approve a proposed FLSA settlement upon a finding that all parties to the action have agreed to it and that it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Drexler v. Tel Nexx, Inc.*, No. Civ. A. 13-CV-13009, 2019 WL 3947206, at *1 (D. Mass. Aug. 21, 2019) (citing *Lynn's Food Stores, Inc. v U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, the Parties have agreed to the Settlement and the facts demonstrate that the Settlement is fair and represents a reasonable compromise of the disputed issues in this case.

**A.   The terms of the settlement provide for fair compensation for the claims raised in the lawsuit.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiffs. The damages that were calculated were based upon the actual records showing the amount paid to the Plaintiffs. Plaintiffs' Counsel calculated the damages for each claim raised by the Plaintiffs. For the off-the-clock claim, the Plaintiffs calculated the potential damages at approximately $25,204.00 on the default two-year limitations period, assuming seven minutes of off-the-clock work per shift. For the claim related to the Kronos hack, the Plaintiffs calculated the potential damages are approximately $14,561.00. Lastly, for the bonus claim, the potential damages are $833.73. The amount claimed to be owed during the statutory period was calculated for each Plaintiff and Opt-in Plaintiff for each week that they worked during the statutory period. The total amount claimed to be owed for each individual was then added together to determine the

total alleged unpaid overtime wages for the Plaintiffs. The total potential damages for all three categories is $40,598.71.

The settlement is fair and reasonable because the amount is greater than the amount they may have recovered during litigation on the two year limitations period, without liquidated damages. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiffs prove willfulness – which is a higher standard.

The recovery reached in the Settlement Agreement is also fair and appropriate given that the Parties disagreed over the merits of the case. Plaintiffs argued that the pre-shift work was compensable under the FLSA. Defendant countered that the pre-shift work involved turning on computers and opening programs, which was not compensable under the FLSA, was not reasonably known to be unpaid work if compensable, and if those tasks were compensable/known, they only took approximately two minutes per shift, at most. Similarly, Defendant argued that the bonuses already were factored into the regular rate of pay by use of a percentage of earnings bonus and that any payments not timely made as a result of the Kronos hack were already issued to the Plaintiffs. Therefore, no damages were due.

Further, the Parties disagreed as to whether the Plaintiffs could satisfy their burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiffs could recover damages for two (2) years or three (3) years prior to the date on which they joined this lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties. Indeed, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. The Parties are able to resolve this case now rather than after years of protracted and difficult litigation. Moreover, there is no evidence of any fraud or collusion amongst the Parties in reaching the settlement. The settlement was the product of arm's length negotiation between Parties with experienced counsel. In exchange for these payments, the Plaintiffs will agree to release Defendant from any and all wage and hour claims they may have.

### B. The settlement is fair and reasonable in light of the uncertainty of the outcome.

The proposed Settlement Agreement is fair to the Plaintiffs because it provides for a settlement with damages calculated based upon the actual records for the Plaintiffs, with each Opt-in Plaintiff allocated a separate amount based upon his/her dates of employment and weeks worked within the limitations period. The settlement allows each Opt-in Plaintiff to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total claimed damages available to all Opt-in Plaintiffs in the aggregate, net of attorneys' fees and costs. That is, hypothetically, if an Opt-in Plaintiff is owed $2,000 and the total settlement amount is $100,000, his/her proportionate share of the settlement is two percent (2%) and he/she will receive that percentage of the settlement proceeds after fees and costs have been deducted. The pro rata allocation to each Opt-in Plaintiff is set forth in Exhibit 2 to the Settlement Agreement.

In determining the reasonableness of the settlement, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The

NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is clearly appropriate for approval.

Moreover, the average recovery on a per Plaintiff basis is greater than the average recoveries in other wage-and-hour settlements. Attached hereto as Exhibit "2" is a 2019 NERA study of trends in wage and hour settlements. This study found that the overall median per-plaintiff settlement value in wage-and-hour cases was $1,412. (*See* Exhibit "2" at page 1). Notably, this study examined wage-and-hour settlements that released claims and penalties under various state laws. Based on the NERA study, the per-person result in this case is higher in comparison to other settlements. *See also Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result); *Khanna v. Intercon Sec. Sys., Inc*., 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014).

As part of the settlement, the Parties agreed to a Service Award for Plaintiff Wynde Collins. Otherwise known as a "service payment" or "incentive award," this amount is in addition to her pro rata settlement share. In light of the efforts resulting in a settlement on behalf of the Opt-in Plaintiffs and the valuable contributions Ms. Collins made throughout the litigation, particularly in its initial phases, Plaintiffs' Counsel submits that the incentive award is reasonable.[3]

---

[3] "Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015). "Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Scovil*, 2014 WL 1057079, at *6. In wage and hour cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher." *Id.* (summarizing cases). Incentive awards are particularly important in employment litigation. *See Bozak*, 2014 WL 3778211, at *4 ("[I]n employment litigation, the plaintiff is

**C.    The Parties have agreed on a fair and reasonable notice plan to administer the settlement.**

The Parties have agreed to administer the settlement through ILYM Group Inc. ("ILYM"). Attached as Exhibit "3" are the proposed costs from ILYM. ILYM will send the settlement checks to the Plaintiffs along with a copy of the Notice attached to the Settlement Agreement as Exhibit "4," which explains the key terms of the settlement and the Plaintiffs' release of claims. All Opt-in Plaintiffs will receive a payment from this settlement. The release of claims for the Opt-in Plaintiffs is a release of wage and hour claims only. There is no claim form. Instead, the release of claims is on the back of the checks and in a notice accompanying the checks. Therefore, there will be a direct payment available to each Plaintiff. This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), the court approved the settlement of an FLSA wage action with a similar process for releasing FLSA claims through check cashing:

> Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case.

---

often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006); *see also Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) (recognizing benefits of plaintiffs bringing wage and hour collective and class litigation because, without them, other employees may not assert their rights due to fears "of retaliation or of being 'blackballed' in [their] industry...."). Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the perceived risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain. *See e.g., Scovil*, 2014 WL 1057079, at *6; *Aros*, 2012 WL 3060470, *3.

*Id.* at *3. Likewise in, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012), the court approved a settlement of a hybrid class and collective claim where class members opted in and released FLSA claims by endorsing settlement checks with the following language on the backside: "By endorsing this check, I consent to join the Class in Franco, et. al. v. Ruiz Food Products, Inc., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Id.* The agreement further provided that, "Class Members must only cash one Settlement Award check to opt-in to the Class." *Id.* Lastly, the court made it clear it was approving a settlement agreement that provided, "waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above." *Id*. at *25.

Other courts likewise have approved this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014).

Additionally, the settlement notice sufficiently informs the Plaintiffs of the settlement, the material terms, their settlement share, the allocation formula, and the release. *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015) (approving class notice that, *inter alia*, described settlement terms); *Prena v. BMO Fin. Corp.*, No. 15-CV-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (approving one-step settlement notice when it was "sufficiently in plain English to explain the important points: the terms of the settlement, the allocation formula, the amount of the entitlement, how to opt-in, and

9

that cashing the check is equivalent to releasing the claim"). Based on the foregoing, the Court should approve the Settlement.

### D.     The attorneys' fees sought are fair and reasonable.

Additionally, the amount sought by Plaintiffs' counsel for attorneys' fees is fair and reasonable. Plaintiffs' Counsel is seeking $12,500.00, which is 25% of the settlement. Plaintiffs' Counsel's lodestar is greater than the fees being sought.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).  Plaintiff's Counsel investigated the claims, analyzed pay data, managed communication with all Opt-in Plaintiffs, and performed other work that resulted in a settlement.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Under Plaintiffs' theory of the case, Plaintiffs' Counsel has secured fair and appropriate compensation for its clients. They acquired a collective settlement that provides recovery for each Opt-in Plaintiff. Under Defendant's theory, the Opt-in Plaintiffs would be owed nothing.

Moreover, Plaintiffs' Counsel has acquired a collective settlement that provides for a favorable percentage of Plaintiffs' estimated damages given the facts of the case and the relative merits of, and risks related to, Plaintiffs' claims and Defendant's possible defenses. The settlement provides for approximately 123% of the total damages under a two year limitations period, unliquidated.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they

10

have been able to discern whether the Plaintiffs even had viable claims. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Plaintiffs in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Plaintiffs were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

### E.     The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, her counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

11

After the Parties reached an agreement on the settlement amount, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs. Each of the Plaintiffs will receive payment for their alleged damages under federal law without the risk or expense of continued litigation or trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.  CONCLUSION

The terms of the settlement have been approved by Plaintiff, her counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

HODGES & FOTY, L.L.P.

*/s  Don J. Foty*
Don J. Foty
(admitted *pro hac vice*)
Texas Bar No. 24050022
Hodges & Foty, LLP
4409 Montrose Blvd., Suite 200
Houston, Texas 77006

Tel. (713) 523-0001
Fax (713) 523-1116
dfoty@hftrialfirm.com

Arnold. J. Lizana, III
BOB No. 646161
Law Office of Arnold J. Lizana III, P.C.
1350 Main Street, Suite 302
Springfield, MA 01103
alizana@attorneylizana.com
Tel. (877) 443-0999

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on April 24, 2023 which will forward a copy to Defendant.

              */s/ Don Foty*
              Don Foty